IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID DOMIANO :
          Plaintiff :
:
  v. : 3:CV-08-1612
: (JUDGE VANASKIE)
SEA BEACH PLAZA, INC. :
          Defendant :

## MEMORANDUM

      Pending before this Court is Defendant Sea Beach Plaza, Inc.'s ("Sea Beach") motion for summary judgment. (Dkt. Entry 14.) At the center of this dispute is real property located in Nanticoke, Luzerne County, Pennsylvania (the "Property"). Plaintiff David Domiano's action for ejectment of Defendant Sea Beach is grounded on Plaintiff's assertion that, as a successor in interest, he maintained a reversionary interest in the Property through a quitclaim deed. According to Mr. Domiano, the Property reverted to him when it ceased to be used for school purposes. For the reasons that follow, Defendant's motion will be granted.

I. BACKGROUND

    On or about June 19, 1914, the Delaware, Lackawanna, and Western Railroad Company ("DLW Railroad") was the owner of the Property. (Dkt. Entry 14, Defendant's

Statement of Material Facts ("DSMF") ¶ 1.)[1] On June 19, 1914, but publicly recorded on March 26, 1915, DLW Railroad conveyed the Property to the Nanticoke School District ("School District") "for school purposes only, and for no other purpose." (DSMF ¶ 2, Ex. "A") ("1914 Deed"). The 1914 Deed, in pertinent part, states:

> THIS INDENTURE . . . . BETWEEN [DLW Railroad] . . . party of the first part, and THE [School District], party of the second part: . . . in consideration of the sum of One Dollar ($1.00) . . . has granted, bargained, sold, aliened, enfeoffed, released, conveyed, and confirmed, and by these presents does grant, bargain, sell, alien, enfoff, release, convey and confirm unto the party of the second part, and its successors, <u>for school purposes only, and for no other purpose</u>, the surface or right of soil of all that certain piece, parcel or tract of land situate in the Fifth Ward of the Borough of Nanticoke, County of Luzerne and state of Pennsylvania, bounded and described [the Property][2] . . . containing nine hundred sixty-one one thousandths (0.961) of an acre of land . . . . TO HAVE AND TO HOLD the said surface of said lot and land, hereditaments and premises hereby granted or mentioned and intended so to be, with the appurtenances, unto said party of the second part, and its successors, <u>to the only proper use and behoof of the said party of the second part, and its successors, forever, excepting and reserving as aforesaid</u>.

(Id. at Ex. "A" SB 00006-SB 00008; emphasis added.)

On April 28, 1983 and recorded on July 22, 1983, Erie Lackawanna Inc., as a successor in interest to DLW Railroad, by quitclaim deed conveyed to Domiano its interest

---

[1] By Local Rule of Court 56.1, the parties are obligated to file an undisputed statement of material facts. The Court will cite DSMF when there is no genuine dispute as to material facts. Otherwise, the Court will cite to Plaintiff's Statement of Material Facts ("PSMF") or the record when the facts are in dispute.

[2] There is no dispute as to the bounds and location of the property.

2

in the Property. (Dkt. Entry 1, Compl. ¶ 8.)³ The quitclaim deed of the Property declares:

> All the remaining right, title and interest of Grantor [Erie Lackawanna Inc.], in and to any lands and interests in lands in the County of Luzerne, in Pennsylvania . . . not heretofore conveyed by Grantor, or its predecessors in title, as well as reversions, remainders, rights of entry and other contingent interests and all rights, privileges and easements reserved to Grantor and its predecessors in deeds for land in the County of Luzerne; . . . . Title to the above-described [P]roperty is being conveyed subject to:
>
>> (1) Statutory and municipal requirements relating to the land and buildings;
>> (2) Any state of facts that an accurate survey and an inspection of the premises would disclose;
>> (3) Leases, easements, license privileges or other agreements for the use of the subject property
>> (4) Assessments, if any, for public improvement.
>
> TOGETHER WITH:
>
> All of Grantor's interest in the agreements mentioned in (3) above.
> TO HAVE AND TO HOLD the premises herein granted unto the Grantee [David Domiano] his heirs, successors and assigns, forever.
> The Erie-Lackawanna Railroad Company is the successor-in-interest of [DLW Railroad] . . . . The Erie Lackawanna Railway Company is the successor-in-interest of the Erie-Lackawanna Railway Company . . . .

(Dkt. Entry 1, Compl. ¶ 8, Ex. "B".) Sea Beach admits that the quitclaim deed was

---

³ For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court. Citations to page numbers refer to the page number of the document on the CM/ECF electronic record.

3

recorded on July 22, 1983. (Dkt. Entry 6, Answer ¶ 8.)

On November 19, 1998, the Greater Nanticoke Area School District, as successor in interest to the School District, petitioned the Court of Common Pleas of Luzerne County for approval of the sale of the Property. (Id. at ¶ 6.) Judge Burke of the Luzerne County Court of Common Pleas, by order dated December 22, 1998, granted the petition approving the sale. (DSMF ¶ 8.) Subsequently, by deed dated May 13, 1999, the Greater Nanticoke Area School District transferred the Property to Brigadeer Development Company, LLC ("Brigadeer"). (Id. at ¶ 10.)

On March 5, 1999, Brigadeer leased the Property to REA & DERICK, Inc., and on October 27, 1999, the City of Nanticoke issued a certificate of occupancy for a CVS pharmacy located on the Property. (Id. at ¶ 12-6.) On August 12, 2004, Brigadeer transferred the title of the Property to Sea Beach. (Id. at 20.)

By letter dated December 9, 1999, Domiano's then counsel wrote to TAZ Abstract, Inc., alleged to be Brigadeer's agent, that "David Domiano is making a claim that said property is his by way of reversionary interest." (Id. at Ex. "1".) Further, the letter claims "[a]s the successor-in-interest of [DLW Railroad], Mr. Domiano's interest in the property vested when the [Greater Nanticoke Area] School District made the decision that the property was no longer going to be used for school purpose." (Id.)

On August 8, 2008, Domiano filed this action, invoking diversity of citizenship under

4

28 U.S.C. § 1332. (Dkt. Entry 1.) Domiano seeks ejectment on the grounds that Sea Beach did not validly acquire the Property, and, therefore, Sea Beach is unjustly, improperly, and wrongfully in possession of the Property. On September 24, 2008, Sea Beach answered the complaint and raised affirmative defenses. (Dkt. Entry 6.) On April 13, 2009, Sea Beach moved for summary judgment. (Dkt. Entry 14.)

II. DISCUSSION

### A. Standard of Review

Summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if proof of its existence or nonexistence might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. Cont'l Ins. Co. v. Bodie, 682 F.2d 436, 438 (3d Cir. 1982). The moving party has the burden of showing the absence of a genuine issue of material fact, but the nonmoving party must present affirmative evidence from which a jury

5

might return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 256-57. Mere conclusory allegations taken from the pleadings are insufficient to withstand a motion for summary judgment. Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Summary judgment is to be entered "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### B. Plaintiff's Claim for Ejectment

"In an action in ejectment the plaintiff has the burden of establishing a right to immediate and exclusive possession of the premises." Lampenfeld v. Seitz, 676 A.2d 684, 686 (Pa. Super. 1996) (citing Sutton v. Miller, 592 A.2d 83 (Pa. Super. 1991)). A plaintiff "must recover on the strength of their own title and not on the weakness of defendant['s] title." Miller v. Dierken, 33 A.2d 804, 807 (Pa. Super. 1943) (citing Artz v. Meister, 123 A. 501, 502 (Pa. 1924)). Stated otherwise, a plaintiff "must rest of the validity of their own title." Id. In Pennsylvania:

> The law in this Commonwealth has long been as stated by the Supreme Court in Greek Catholic Congregation of Borough of Olyphant v. Plummer, 338 Pa. 373, 377, 12 A.2d 435, 437 (1940):
>
>> Quit-claim deeds, long known to the law, are used when a party wishes to sell or otherwise convey an interest he may think he has in land but does not wish to warrant his title. It does not purport to convey anything more than the interest of the grantor at the time of its

6

> execution. 16 Am.Jur. p. 560, sec. 219: '<u>The distinguishing characteristic of a quit-claim deed is that it is a conveyance of the interest or title of the grantor in and to the property described, rather than of the property itself</u>.' (Emphasis added.)
>
> "One who receives a quit-claim deed to a property must proceed with caution if he seeks to possess himself of that property. By securing a quit-claim deed he has eliminated only one person who might bar his ingress to that property. A quit-claim deed contains no covenant of peaceful possession."

<u>In re Delinquent Tax by Elk County</u>, 793 A.2d 1025, 1030 (Pa. Commw. 2002).

Domiano's ejectment claim is grounded on his assertion that he held a "reversionary interest" in the Property. (<u>See</u> Compl. ¶ 13; PSMF ¶¶ 23-4, Ex. "1".) The Pennsylvania Superior Court has explained:

> "(1) A reversionary interest is any future interest left in a transferor or his successor In interest."(2) A reversion is any reversionary interest which is not subject to a condition precedent."(3) A possibility of reverter is any reversionary interest which is subject to a condition precedent." 2 Restatement of the Law, Property, § 154, p. 525."*** a possibility of reverter *** 'is not an estate, present or future, but a possibility of having an (future) estate.' *** 'A reversion is the remnant of an estate continuing in the grantor, undisposed of, after the grant of a part of his interest'": <u>Smith v. Glen Alden Coal Co. et al.</u>, 347 Pa. 290, at pages 302, 303, 32 A.2d 227, at page 234.

<u>Miller</u>, 33 A.2d at 805 n.1.

Domiano's claim in this action rests upon the 1914 Deed. Domiano can only succeed to the extent that the Greater Nanticoke Area School District's conveyance to Brigadeer, which was approved by the Luzerne County Court of Common Pleas, triggered, by operation of law, a reverter. (<u>See</u> Dkt. Entry 16, Pltf.'s Br. Opp'n Mot. Summ. J. at 2-3.)

Accordingly, the controlling question is whether the 1914 Deed created a reversionary interest.

When interpreting a deed, the Court's "primary object must be to ascertain and effectuate what the parties themselves intended." Consol Pennsylvania Coal Co. v. Farmers Nat'l Bank of Claysville, 960 A.2d 121, 128 (Pa. Super. 2009) (citation omitted), vacated on other grounds 969 A.2d 565 (Pa. 2009) (failure to join indispensable parties). The Pennsylvania Superior Court went on to elaborate:

> The traditional rules of construction to determine that intention involve the following principles . . . . We seek to ascertain not what the parties may have intended by the language but what is the meaning of the words they used. Id. Effect must be given to all the language of the instrument, and no part shall be rejected if it can be given a meaning. Id. If a doubt arises concerning the interpretation of the instrument, it will be resolved against the party who prepared it. Id. . . . . To ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed.

Id.

The law in Pennsylvania is well settled:

all provisions which seek to tie up real estate and prevent alienation are strictly construed, and, as the deed in question makes no provision for a reversion or forfeiture, none exists. To make the estate conditional, the words must clearly show such intent. Cook v. Trimble, 9 Watts, 15. See, also, Brendle v. German Reformed Congregation et al., 33 Pa. 415. We have repeatedly held that a deed's limitation of the use to which the land conveyed might be put did not, without more, create a conditional fee or cause a forfeiture if put to another use. For example, in T. W. Phillips G. & O. Co. v. Lingenfelter, 262 Pa. 500, 105 A. 888, 5 A. L. R. 1495, it is held, in an opinion by Chief Justice Brown,

8

that a deed to a school board 'for school purposes only' vests an estate in fee simple, with all mineral rights, and that the words in the deed as above quoted are surplusage.

Sapper v. Mathers, 133 A. 565 (Pa. 1926).

"It is axiomatic that mere expression of purpose will not debase a fee." Higbee Corp. v. Kennedy, 428 A.2d 592, 596 (Pa. Super. 1981) (citing Abel v. Girard Trust Co., 73 A.2d 682 (Pa. 1950); Peters v. E. Penn Twp. Sch. Dist., 126 A.2d 802. (Pa. Super. 1957)). Indeed, "[t]he policy of the law is to render the alienation and transfer of land as free as possible, and conditions are not favored in law." Id. (quoting First Methodist Episcopal Church of Columbia v. Old Columbia Public Ground Co., 103 Pa. 608, 1883 WL 13453, *5 (Pa. 1883)). Thus, under Pennsylvania's "policy of favoring the free alienability of land, 'a deed which would convey an estate in fee simple except for certain words, or for a phrase or clause must be interpreted strictly against any such limitation unless the grantor's intention to so limit the fee is clearly expressed or necessarily implied.'" Id. (quoting Peters, 126 A.2d at 803).

Plaintiff relies on Calhoun v. Hays, 39 A.2d 307, 310 (Pa. Super. 1944), for the proposition that "[w]here an estate is conveyed in fee for a specified purpose, 'and no other,' the fee is a base fee determinable upon the cessation of the use of the property for that purpose. The possibility of reverter is capable of transmission to his grantees and will pass to them under a conveyance of the reversion[.]" (citing Siegel v. Lauer, 23 A. 996 (Pa. 1892)).

9

In <u>Calhoun</u>, the deed in question conveyed land to a school district. <u>Id.</u> at 308. The deed, in pertinent part, stated that the school district was to use the land:

> for the establishment and maintenance of the common schools of said district only and for no other purpose or purposes whatever, <u>said lot to revert to the grantors, their heirs and assigns, as soon as said parties of the second part or their successors in office cease to use it for said purpose</u>.

<u>Id.</u> (emphasis added). Calhoun and Hays had entered into an executory contract whereby Hays would pay $300 for Calhoun to convey the school property to Hays once the property was no longer used for school purposes. <u>Id.</u> at 308-09. Calhoun and Hays both died before the school district stopped using the property for school purposes. <u>Id.</u> at 309. The trial court held, and the appellate court affirmed, that under the executory contract Hays had acquired equitable title and the right of possession of the property, which passed to Hays' estate under his will. <u>Id.</u> The court concluded:

> The agreement in this case is an executory contract. The Calhouns agreed to convey the real estate in question when it was no longer used for school purposes, the vendee [Hays] to pay the sum of $300 on the date of delivery of the deed. No words of inheritance are used in the agreement, but the intent to convey the fee is apparent not only from the language of the instrument, but from the fact that prior to the date of this agreement, Calhoun had conveyed to Hays, in fee, the acreage completely surrounding the school property. The intent to convey the school lot in fee to Hays and his heirs, if and when it reverted to Calhoun, his heirs or assigns, logically follows.

<u>Id.</u> 310-11.

Unlike the deed in <u>Calhoun</u>, the 1914 Deed contains no limitation language, and no reversionary clause. The 1914 Deed contains words "which merely express purpose for

10

which the conveyance is made," and do not limit the title. See Peters, 126 A.2d at 803; see also Slegel, 23 A. 99 ("Of course, the mere expression of a purpose will not of and by itself debase a fee."). "[S]uch words are superfluous to the grant." Id. (citing T.W. Phillips Gas & Oil Co., 105 A. 888).

Plaintiff's reliance on Peters only buttresses the conclusion that title to the Property does not revert back to Domiano. In Peters, the appellate court initially noted:

> We find various expressions used in those cases in which it has been held that only a purpose had been expressed. Examples of such expressions are: 'for the use of the inhabitants,' Pearson v. Nelley, 331 Pa. 376, 378, 200 A. 654, 655; "for school purposes only," T. W. Phillips Gas & Oil Co. v. Lingenfelter, supra, 262 Pa. 500, 501, 105 A. 888, 889; "for the use and benefit of the inhabitants * * * and to and for no other use of purpose whatsoever," Abel v. Girard Trust Company, supra, 365 Pa. 34, 36, 73 A.2d 682, 683; 'for no other purpose whatsoever than a cemetery or burial ground,' Sapper v. Mathers, supra, 286 Pa. 364, 365, 133 A. 565. It is to be noted that in not one of the cases were the words 'as long as' used.
>
> We have cases in which there was not only an expression of a purpose or use, but in which there was a specific reverter clause as well: "to be used for the establishment and maintenance of the common schools * * * and for no other purpose * * * said lot to revert to the grantors, their heirs and assigns, as soon as said parties * * * cease to use it for said purpose," Calhoun v. Hays, 155 Pa.Super. 519, 521, 39 A.2d 307, 308; 'so long as they use it for that purpose and no longer, and them to return back to the original owner,' Henderson v. Hunter, 59 Pa. 335, 340; 'for school purposes so long as it shall be used for school purposes, * * * after which this shall be null and void,' Beaver Township School District v. Burdick, 51 Pa.Super. 496, 497.

Id. at 803-04. Although there was no specific reverter clause in Peters, the court held that "if the intent to limit the fee is otherwise clear," then the "absence of such clause is not

11

determinative of the effect of the words." Id. at 804. When intent is clear a court may find an implied reverter to the grantor. Id. The issue in Peters was whether the words "as long as" clearly indicated the grantor's intention to create "at most a fee simple determinable." Id. The court in Peters considered the fact that Pennsylvania "courts have frequently said that the words 'so long as' and 'as long as' are technical words which limit a fee." Id. The appellate court discussed, in distinguishing Peters from Pearson v. Nelley, a case in which the clause was held to be a mere expression of purpose, the Pearson court's observation:

> There are no apt, technical words, such as 'so that,' 'provided,' 'if it shall happen,' etc. * * * contained in the grant, nor is the declaration of the use coupled with any clause of re-entry or a provision that the estate conveyed should cease or be void on any contingency. * * * So, also, we fail to find in the patent the usual and apt words to create a limitation, such as 'while,' 'so long as,' 'until,' 'during,' * * *, or words of similar import.

Id. (quoting Pearson v. Nelley, 200 A. 654, 655 (Pa. 1938)). The deed in Peters conveyed title "'for public school purposes'; [and the grantor] significantly added that the school district was 'to have and to hold the said piece of ground [] as long as' it was so used." Id. The court concluded, relying on the technically significant words in the context of conveying a deed "as long as," that a fee "determinable [arose] when the land [wa]s no longer used for the stanted [sic] purpose." Id. at 805.

Here, the 1914 Deed does not contain any technical words limiting the fee. Rather, the language "for school purposes only, and no other purpose," and "to the only proper use" falls under Pennsylvania precedent for holding that only a purpose was expressed, and a

12

reverter clause was not created. See Pearson, 200 A. at 655 (finding that only purpose had been expressed with "for the use of the inhabitants"); T.W. Phillips Gas & Oil Co., 105 A. at 889 (concluding that "for school purposes only" without any other condition or restraint conveyed a fee simple to the school district); Abel, 73 A.2d at 684 (noting grantor's intention is not "clearly expressed, or necessarily implied," with the words "for no other use or purpose whatsoever"); Sapper, 133 A. 565 (holding when land deeded "to a city is conditioned that a lot should be used as a burying ground, and for no other purpose whatsoever, without any record of any intention, either expressed or implied . . . a fee is conveyed and cannot be disturbed when there is a use made different from that nominated in the deed.") (citing Rankin Regular Baptist Church v. Edwards, 53 A. 770 (Pa. 1902)). The 1914 Deed lacks any express or implied intention to create a reversionary interest. As such, the Court will not read into the deed an implied reverter in favor of DLW Railroad, and, consequently, to Mr. Domiano. See Higbee, 428 A.2d at 596.

Furthermore, 1914 Deed does not contain any technically significant words that create a conditional estate. See Peters, 126 A.2d 803-04. Additionally, the Commonwealth of Pennsylvania has a long standing policy of favoring free alienability of land, and strictly construing deeds "which would convey an estate in fee simple except for certain words." Higbee Corp., 428 A.2d at 596. Such is the case here. With the exception of the designated purpose of the deed to be used for school purposes, there is no language in the deed that

13

would create a conditional conveyance. Therefore, a fee simple was executed by the 1914 Deed. Accordingly, Plaintiff's claim must fail.[4]

III. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment will be granted. An appropriate order follows.

s/ Thomas I. Vanaskie  
Thomas I. Vanaskie  
United States District Judge

---

[4] Mr. Domiano also argues that the $1.00 consideration coupled with the habendum clause illustrates the parties intent to create a reverter. (Dkt. entry 16, Pltf.'s Br. Opp'n Mot. Summ. J. at 7.) Contrary to Plaintiff's assertion, the Pennsylvania Supreme Court has long held that "the recital of the consideration and the statement of the purpose for which the land is to be used are wholly insufficient to create a conditional estate." T.W. Phillips Gas & Oil Co., 105 A. at 890 (quoting First Methodist Church, 103 Pa. 608, 1883 WL 13453). Appropriately, a "federal court follows the precedent of the state's highest court[.]" City of Philadelphia, 277 F.3d at 421. Thus, Domiano's contention is unpersuasive.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAVID DOMIANO                    :
       Plaintiff          :
                          :
  v.                             :    3:CV-08-1612
                          :    (JUDGE VANASKIE)
SEA BEACH PLAZA, INC.            :
       Defendant          :

## ORDER

     NOW, THIS 31st DAY OF MARCH, 2010, for the reasons set in the foregoing memorandum, IT IS HEREBY ORDERED THAT:

    1. Defendant's Motion for Summary Judgment (Dkt. Entry 14) is GRANTED.

    2. The Clerk of Court is directed to enter judgment in favor of Defendant and mark this matter CLOSED.

                                      s/ Thomas I. Vanaskie
                                      Thomas I. Vanaskie
                                      United States District Judge